IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARMANDO LOPEZ-MARQUEZ,

        Plaintiff,                            No. CIV S-04-2459 DFL PAN

        vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.                       FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").  For the reasons discussed below, the court recommends plaintiff's motion for summary judgment or remand be denied and the Commissioner's cross-motion for summary judgment be granted.

/////

/////

/////

/////

1

I. Factual and Procedural Background

In a decision dated August 27, 2003, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of post right hip replacement and degenerative disk disease (DDD) of the low back, but that these impairments do not meet or medically equal a listed impairment; plaintiff has the residual functional capacity for employment at the sedentary level with no squatting or crouching, a sit/stand option, and mild impairment to concentration/attention due to pain medication; plaintiff's subjective complaints were not credible; and plaintiff is not disabled. Administrative

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

Transcript ("AT") 21-22.

Plaintiff contends the ALJ erred by not sufficiently advising plaintiff of his right to representation at the hearing; that the ALJ improperly applied the Medical-Vocational Guidelines ("the grids"); that the testimony of the vocational expert (VE) was insufficient to sustain the Commissioner's burden of showing that a significant number of jobs for which plaintiff was qualified existed in the national economy; and that the ALJ improperly discredited plaintiff's testimony.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

1335, 1338 (9th Cir. 1988).

III. <u>Analysis</u>

    1. <u>The ALJ Properly Conducted the Hearing Following Plaintiff's Waiver of his Right to Representation.</u>

    Plaintiff has a statutory right to counsel at the administrative hearing which may be knowingly and intelligently waived. <u>Duns v. Heckler</u>, 586 F. Supp. 359, 364 (N.D. Cal. 1984), citing <u>Ware v. Schweiker</u>, 651 F.2d 408 (5th Cir. 1982), <u>Floyd v. Schweiker</u>, 550 F. Supp. 863 (N.D. Ill. 1982). Even if the waiver is deficient, plaintiff must demonstrate prejudice or unfairness in the proceedings in order to obtain a remand. <u>Hall v. Secretary of Health, Educ. & Welfare</u>, 602 F.2d 1372, 1378 (9th Cir. 1979). The real issue, however, is not whether the waiver was knowing or intelligent, but whether without the representation, the ALJ met his burden "to conscientiously and scrupulously probe into, inquire of, and explore for all the relevant facts" in order to protect plaintiff's interest. <u>Id.</u>, quoting <u>Vidal v. Harris</u>, 637 F.2d 710, 713 (9th Cir. 1981); <u>Cox v. Califano</u>, 587 F.2d 988 (9th Cir. 1978). This duty includes diligently ensuring that both favorable and unfavorable facts and circumstances are elicited at hearing. <u>Key v. Heckler</u>, 754 F.2d 1545, 1551 (9th Cir. 1985). The ALJ must fully and fairly develop the record, and when a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144 (9th Cir. 2001). Only if the plaintiff can show prejudice or unfairness in the administrative proceeding as a result of not having representation is remand warranted. <u>Vidal</u>, 637 F.2d at 713.

    Plaintiff was advised of his right to representation on no less than four occasions. AT 35, 37, 48, 57. Included in the initial advisement was a leaflet entitled "Social Security and Your Right to Representation," as well as a list of possible representatives. AT 39, 41. At the hearing, plaintiff stated that he was aware of his right to representation and did not think he needed anyone to be present. AT 150. Following a brief introduction, the following exchange took place:

4

| | |
|---|---|
| 1 | ALJ: Okay, Mr. Lopez, before we get into your case, I have to ask you if you're |
| 2 | aware you have the right to have an attorney or other representative with you |
| 3 | today? |
| 4 | CLMT: I don't think I need one. |
| 5 | ALJ: Okay.  Well, you may not, you may - you don't need one, but sometimes |
| 6 | they're helpful. |
| 7 | CLMT: Yeah, I know. |
| 8 | ALJ: Yeah.  Okay, so you wish to proceed without an attorney. |
| 9 | CLMT: Yes. |

Id. Plaintiff's definitive response to the ALJ's inquiries regarding the right to representation clearly demonstrate that plaintiff knew, understood, and voluntarily waived his right to have someone present on his behalf.  Plaintiff's waiver of his right to representation was not improper.

Furthermore, the subsequent hearing conducted by the ALJ sufficiently examined all relevant lines of inquiry.  Plaintiff's rights were protected by the ALJ through his examination of plaintiff, his medical history, and work experience.  The ALJ even reexamined plaintiff at the request of the VE in order to more fully develop the record and the basis for any opinions the VE might offer.  AT 165.  In addition, the ALJ explained to plaintiff the purpose for the VE, AT 151-52; his credentials, AT 164-65; and the techniques the VE employed to reach his conclusions, AT 151-52.  The ALJ also periodically interrupted his questioning of the VE in order to ensure that plaintiff understood the vernacular, euphemisms, and acronyms used by the VE in his testimony. AT 167.

Plaintiff was also given opportunities to develop the record.  Plaintiff submitted additional exhibits to be considered by the ALJ.  AT 151.  In addition, the ALJ asked plaintiff if there was anything he thought he missed.  AT 164.  This also occurred following the conclusion of the ALJ's questioning of the VE.  AT 165.  At no time did plaintiff indicate that he was unable to comprehend the hearing or his need to participate fully.

Plaintiff provided valuable testimony as a result of the thorough questioning of the ALJ and his own independent offers of evidence. Plaintiff knowingly and voluntarily waived his right to representation. The ALJ did not fail to adequately develop the record in light of that waiver.

### 2. The ALJ Properly Determined that Plaintiff was Disabled.

The Medical-Vocational Guidelines ("the grids") are in table form. The tables present various combinations of factors the ALJ must consider in determining whether other work is available. See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience. For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983). If the grids do not accurately represent all of the obstacles affecting plaintiff's ability to work, they cannot be relied upon and a VE is needed to assess plaintiff's employability. See Stewart v. Sullivan, 881 F.2d 740 (9th Cir. 1989).

In this case, despite plaintiff's assertion, the ALJ did not improperly apply the grids in determining that plaintiff was disabled. In fact, the ALJ did not apply the grids at all. As stated explicitly in his findings, the ALJ based his determination of plaintiff's disabled status upon the testimony of the vocational expert, not the grids. AT 22 ("claimant is not disabled pursuant to the testimony of the vocational expert"). Consequently, any argument that the ALJ failed to properly utilize the grids is without merit.

Furthermore, had the ALJ relied upon the grids instead of employing a VE, it is not certain based upon the record that a finding of disabled would have been required. Under the

grids, Rule 201.17 dictates that a person of plaintiff's age who is illiterate and with unskilled or no previous work experience is disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1. Based on the evidence in the record, it is not apparent that plaintiff meets either of these two thresholds.

The ALJ made no explicit finding regarding plaintiff's literacy. Rather, the ALJ stated simply that plaintiff testified that he can read, and has some trouble with writing. AT 20. Plaintiff indicated in his Disability Report that he can speak and read English, as well as write more than his name in English. AT 71.

The Social Security Administration defines illiterate as someone who "cannot read or write a simple message such as instructions or inventory lists." 20 C.F.R. 404.1564(b)(1). Plaintiff's description of his own abilities to read and write do not necessarily indicate that he meets this definition. Given the evidence in the record, it is not apparent that a finding of illiterate is mandated under the rules.

Even if it were, the grids require that plaintiff be *both* illiterate and unskilled in order to reach a finding of disabled. That requirement cannot be met in this case. The VE testified that plaintiff's previous work experience as a carpet installer with at least two years training and on the job experience placed him in a skilled category. AT 167. This skilled category is well beyond the unskilled category required for a finding of disabled under Rule 201.17.

Once a VE establishes the level of work a claimant is able to perform, the ALJ is bound by that finding and the results dictated by the grids. See Cooper v. Sullivan, 880 F.2d 1152, 1157 (9th Cir. 1989). In this case, the grids dictate a finding of not disabled for someone of plaintiff's age who possesses plaintiff's job skills. This finding holds regardless of plaintiff's level of literacy.

Regardless, the ALJ's use of a vocational expert in this case was a proper way to determine that plaintiff was disabled. As the ALJ did not reach this conclusion by utilizing the

7

grids; as a result, there can be no error with their application. The question of the ALJ's assessment of plaintiff's literacy and its consideration under Rule 201.17 is not implicated by these findings. The ALJ's reliance upon the testimony of the VE mooted any application of the grids to this case.

3. <u>The ALJ's Reliance on the Testimony of the Vocational Expert (VE) is Sufficient to Sustain the Findings.</u>

The ALJ properly utilized the testimony of the VE to reach his findings. The number of jobs identified by the VE was significant and could be relied upon by the ALJ. Furthermore, the hypotheticals posed by the ALJ to the VE included all of the relevant exertional and nonexertional limitations supported by the evidence. The ALJ's use of the VE's testimony was not in error.

There is no pre-set limit at which the number of available jobs becomes significant. <u>Barker v. Secretary of Health and Human Services</u>, 882 F.2d 1474, 1478 (9th Cir. 1989) (finding 2,466 jobs in the local area a significant number); <u>see</u> also, <u>Martinez v. Heckler</u>, 807 F.2d 771 (9th Cir. 1986) (holding that 3,750 to 4,250 jobs were a significant number). In this case, the VE identified two jobs that existed in the local and national economy. For each of these jobs, no less than 1,000 jobs existed locally and up to 40,000 in the national economy. AT 168-69.

It is of no relevance that the jobs available locally are only a small percentage of those that exist in the national economy. <u>Martinez</u>, 807 F.2d at 775. Furthermore, while the VE only identified two positions, he stated that other positions similar to those identified were available, and that the two positions he identified were examples of the broader field of jobs available. AT 169; <u>see</u> 20 C.F.R. 416.966(b) ("work exists in the national economy when there is a significant number of jobs (in one or more occupations"). Given the evidence of jobs in several fields that are available locally in sizeable numbers, and that number in the tens of thousands nationally, the ALJ did not error by concluding that there exist a significant number of

1  jobs for which plaintiff is qualified.

2  To reach this conclusion that there existed a significant number of jobs for which
3  plaintiff is qualified, the ALJ posed hypothetical questions to the VE. Hypothetical questions
4  posed to a vocational expert must set out all the substantial, supported limitations and restrictions
5  of the particular claimant. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a
6  hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the
7  national economy the claimant can perform has no evidentiary value. DeLorme v. Sullivan, 924
8  F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical
9  questions, based on alternate interpretations of the evidence, the hypothetical that ultimately
10 serves as the basis for the ALJ's determination must be supported by substantial evidence in the
11 record as a whole. Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

12 The ALJ asked the VE a hypothetical that included all of the relevant limitations
13 supported by substantial evidence in the record. These limitations included plaintiff's age, and
14 his vocational and educational background, of which the VE was aware through his examination
15 of the record and plaintiff's testimony. AT 168. The ALJ restricted the hypothetical to preclude
16 any employment which demanded greater effort than a sedentary level, as well as squatting or
17 crouching. Id. This hypothetical was further limited to include mild and moderate impairments
18 in concentration as a result of the distracting effects of pain and pain medication. AT 169-70.

19 The ALJ concluded that plaintiff was mildly impaired by his use of pain
20 medication. AT 21. Specifically, the record revealed that plaintiff took Vicodin to alleviate his
21 symptoms. AT 159. At this level of impairment, the VE concluded that there remained a
22 significant number of jobs in the national economy. However, when asked about jobs for
23 plaintiff if he were moderately impaired as a result of his pain medication, the VE testified that
24 plaintiff would be precluded from performing *any* jobs in the national economy. AT 170.

25 The ALJ's determination that plaintiff suffered only mild symptoms as opposed to
26 moderate ones was proper. As noted above, medical records indicated that plaintiff remained

9

physically capable of completing work well above the sedentary level.  Furthermore, as discussed below, the ALJ properly discredited plaintiff's subjective complaints.  The ALJ's decision to ultimately rely upon a hypothetical that indicated only mild impairment was supported by substantial evidence in the record.

The hypothetical upon which the ALJ relied did not include the use of a cane. This failure to include the use of a cane in the hypothetical was not in error.  The ALJ found that plaintiff could do sedentary work.  AT 20.  This finding was supported by substantial evidence in the record, including the reports of three physicians, State Agency medical consultants, and plaintiff's own testimony.  In fact, this finding was more generous than the findings of Dr. Kelly, AT 107 (plaintiff could lift 20 pounds frequently and 50 pounds occasionally); and the State Agency, AT 113 (plaintiff can stand six hours in an eight hour day and lift 20 pounds frequently and 50 pounds occasionally).  And while Dr. Kelly noted that the use of a cane might assist plaintiff's walking if his pain exacerbated, he still stated that plaintiff could stand and walk for six hours in an eight hour day.  AT 106.  No other medical examination noted the need for a cane.

Furthermore, this medical evidence regarding the lack of any need for a cane is supported by plaintiff's testimony.  Plaintiff testified to pain when he walks, AT 155; that it bothers him when he walks "a little bit," AT 158; and that he can only walk several hundred feet before the pain bothers him, Id..  However, plaintiff also testified that when he was told to use a cane, he stopped using it because it did not help him any.  Id.  As the medical evidence does not prescribe use of a cane, and plaintiff testified that he ignored recommendations to use a cane because it did not help, it was not in error to exclude it from the hypothetical.

The type of work posed by the hypothetical also precluded the need to inquire of the VE how a cane might affect his findings.  Sedentary work is defined as work "involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. 404.1657.  Furthermore, sedentary work involves

"sitting," as well as occasional walking and standing when necessary to carry out other job duties. Id. The limited mobility requirements of a sedentary position, in addition to the lack of medical evidence dictating its use, obviate the need to include it in any hypothetical.

The ALJ properly utilized the testimony of the VE to reach his conclusions. Based upon the hypothetical incorporating all relevant limitations contained in the record, the ALJ determined that a significant number of jobs existed in the national economy for which plaintiff was qualified. This finding was proper under the law and is supported by substantial evidence in the record.

4. The ALJ Properly Analyzed Plaintiff's Credibility.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be

relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

The record contains numerous inconsistencies that contradict plaintiff's account of the seriousness of his injuries. Plaintiff complains that he is disabled and no longer able to work. However, as the ALJ noted in his findings, plaintiff testified that he does light housework, AT 162; takes his wife shopping, Id.; goes to casinos for three to four hours, Id.; and cares for his two year old daughter and his seven month old grand daughter, AT 163. Furthermore, plaintiff testified to attempting to rejoin his son and nephew in a carpet laying business, a job classified as very heavy work requiring the lifting of up to 50 pounds frequently and 100 pounds occasionally. AT 160. In addition, plaintiff's complaints are not consistent with the medical evidence, all of which found that plaintiff has some capacity for work. These inconsistencies are permissible, specific grounds upon which the ALJ based his credibility determination and should not be disturbed by this court.

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment or remand be denied, and

2. The Commissioner's cross-motion for summary judgment be granted.

These findings and recommendations are submitted to the United States District

1  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten
2  days after being served with these findings and recommendations, any party may file written
3  objections with the court and serve a copy on all parties. Such a document should be captioned
4  "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections
5  shall be served and filed within ten days after service of the objections. The parties are advised
6  that failure to file objections within the specified time may waive the right to appeal the District
7  Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
8  DATED: May 2, 2006.

UNITED STATES MAGISTRATE JUDGE

ggh13
Lopez-Marquez.ss.wpd